UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MELVIN S.,[1]

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

21-CV-00386-LJV
DECISION & ORDER

---

On March 12, 2021, the plaintiff, Melvin S. ("Melvin"), brought this action under the Social Security Act ("the Act"). Docket Item 1. He seeks review of the determination by the Commissioner of Social Security ("Commissioner") that he was not disabled.[2] *Id.* On February 4, 2022, Melvin moved for judgment on the pleadings, Docket Item 7; on June 29, 2022, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 8; and on August 10, 2022, Melvin replied, Docket Item 9.

---

[1] To protect the privacy interests of Social Security litigants while maintaining public access to judicial records, this Court will identify any non-government party in cases filed under 42 U.S.C. § 405(g) only by first name and last initial. Standing Order, Identification of Non-government Parties in Social Security Opinions (W.D.N.Y. Nov. 18, 2020).

[2] Melvin applied for Supplemental Security Income ("SSI"), which is paid to a person with a disability who also demonstrates financial need. 42 U.S.C. § 1382(a). A qualified individual may receive both disability insurance benefits ("DIB") and SSI, and the Social Security Administration uses the same five-step evaluation process to determine eligibility for both programs. *See* 20 C.F.R. §§ 404.1520(a)(4) (concerning DIB), 416.920(a)(4) (concerning SSI).

For the reasons that follow, this Court denies Melvin's motion and grants the Commissioner's cross-motion.[3]

## STANDARD OF REVIEW

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id*. This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (alterations omitted) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).

"Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "The substantial evidence standard means once an ALJ finds facts, [the court] can reject those facts only if a reasonable fact finder would *have to conclude otherwise*." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotation marks and citation omitted) (emphasis in original); *see McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is susceptible to

---

[3] This Court assumes familiarity with the underlying facts, the procedural history, and the decision of the Administrative Law Judge ("ALJ") and refers only to the facts necessary to explain its decision.

2

more than one rational interpretation, the Commissioner's conclusion must be upheld."). But "[w]here there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." *Johnson*, 817 F.2d at 986.

## DISCUSSION

**I.    THE ALJ'S DECISION**

On September 16, 2020, the ALJ found that Melvin had not been under a disability since March 23, 2018, the date on which his child disability benefits ended. *See* Docket Item 6 at 21-34.  The ALJ's decision was based on the five-step sequential evaluation process under 20 C.F.R. § 416.920(a).  *See id.*

At step one, the ALJ found that Melvin had not engaged in substantial gainful activity since March 23, 2018.  *Id.* at 24.  At step two, the ALJ found that Melvin suffered from one severe, medically determinable impairment: attention deficit hyperactivity disorder ("ADHD").  *Id.* at 24-25.

At step three, the ALJ found that Melvin's severe, medically determinable impairment did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *See id.* at 25-27.  More specifically, the ALJ found that Melvin's impairment did not meet or medically equal listing 12.11 (neurodevelopmental disorders).  *See id.*  In assessing Melvin's mental impairments, the ALJ found that Melvin was: (1) moderately impaired in understanding, remembering, or applying information; (2) not impaired in interacting with others; (3) moderately

3

impaired in concentrating, persisting, or maintaining pace; and (4) moderately impaired in adapting or managing himself. *Id.* at 25-26.

The ALJ then found that Melvin had the residual functional capacity ("RFC")[4] to "perform work a full range of work at all exertional levels" except that:

> [Melvin] can occasionally work at unprotected heights, occasionally around moving mechanical parts, and occasionally operate a motor vehicle. He is able to perform simple, routine, and repetitive tasks and make simple work-related decisions.

*See id.* at 27.

At step four, the ALJ found that Melvin had no past relevant work. *Id.* at 32. But given Melvin's age, education, and RFC, the ALJ found at step five that Melvin could perform substantial gainful activity as a hand packer, cleaner, or kitchen helper. *Id.* at 32-33; *see Dictionary of Occupational Titles* 920.587-018, 1991 WL 687916 (Jan. 1, 2016); *id.* at 361.687-018, 1991 WL 673258; *id.* at 318.687-010, 1991 WL 672755. Therefore, the ALJ found that Melvin had not been under a disability or entitled to SSI since March 23, 2018. *See* Docket Item 6 at 33-34.

## II.   ALLEGATIONS

Melvin argues that the ALJ erred in two ways. *See* Docket Item 7-1 at 6-11. First, he argues that the ALJ failed to develop the record by obtaining treatment notes from Melvin's therapy at Spectrum Health Services ("Spectrum"). *Id.* at 7-9. Second, he argues that the ALJ failed to incorporate into the RFC the moderate limitations found

---

[4] A claimant's RFC is the most "an individual can still do despite his or her limitations . . . in an ordinary work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996). "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.*; *see Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999).

by a consultant who examined Melvin, Gregory Fabiano, Ph.D.  *See id.* at 10-11.  For the reasons that follow, this Court disagrees

### III.  ANALYSIS

#### A.  Duty to Develop the Record

Melvin first argues that the ALJ erred by not developing the record.  Melvin says that "Spectrum, [his] mental health provider, failed to provide *any* treatment notes from individual therapy, despite the fact that Spectrum was [his] primary mental health provider during the entire relevant time frame, and [his] claim was based on mental health conditions."  *Id.* at 6 (emphasis in original).  Therefore, Melvin says, "[t]he ALJ obviously erred in failing to develop this record especially considering that [Melvin] proceeded *pro se* at the hearing level and suffers from primarily mental health conditions."  *Id.* (italics added).

"Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative duty to develop the administrative record."  *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996).  But "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim."  *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1983) (internal quotation marks omitted); *see also Janes v. Berryhill*, 710 F. App'x 33, 34 (2d Cir. 2018) (summary order) (holding that an ALJ "is not required to develop the record any further when the evidence already presented is adequate for [the ALJ] to make a determination as to disability." (internal quotation marks and citation omitted)).

Here, there are no obvious gaps in Melvin's mental health treatment records with Spectrum. In fact, the administrative record contains hundreds of pages of records from Melvin's treatment with Spectrum between June 24, 2013, and January 6, 2020. *See* Docket Item 6 at 438-673, 800-989, 1002-1031, 1036-1126. Those records include individualized action plans, discharge plans, and annual assessments describing Melvin's treatment with Spectrum at regular intervals. *See, e.g.*, *id.* at 1041-42 (narrative summary from annual assessment dated September 23, 2019); *id.* at 1052 (note contained in individualized action plan stating that on December 14, 2018, "Melvin report[ed] that his [mental health symptoms] have improved."). So there was no reason for the ALJ to suspect a record gap that needed filling.

Melvin asserts that there are "individual therapy treatment notes from Spectrum" missing from the record. *See* Docket Item 7-1 at 8. But even if that is true, Melvin has been represented by counsel since 2020, *see* Docket Item 6 at 435—more than enough time for counsel to obtain any missing records and to submit them so that this Court could determine whether they might impact the ALJ's decision. Because counsel has not done so, Melvin's "speculation that th[ose] additional records exist or could be obtained is not a sufficient basis upon which to warrant remand." *See Kaitlynn K. v. Comm'r of Soc. Sec.*, 2023 WL 2165179, at *5 (W.D.N.Y. Feb. 22, 2023) (also collecting cases); *Morris v. Berryhill*, 721 F. App'x 25, 27 (2d Cir. 2018) (summary order) ("The appellant urges that three missing records may exist that bear on Dr. Gomez's 'moderately limited' opinion. But that theoretical possibility does not establish that the ALJ failed to develop a complete record."); *Aman v. Colvin*, 46 F. Supp. 3d 220, 225 n.2 (W.D.N.Y. 2014) ("[I]t appears that the Commissioner obtained all that there was to

obtain, and plaintiff's contentions that more records existed, or that such records, if they did exist, would have supported her claim of disability, are wholly speculative."); *see also Johnson v. Colvin*, 2014 WL 1394365, at *6 (W.D.N.Y. Apr. 9, 2014) ("Since Plaintiff is represented by counsel, the Court presumes that if evidence in support of the memorandum's conclusory arguments were to be found, counsel would have cited to it.").

What is more, the Spectrum treatment records that the ALJ had were sufficient to make the disability determination. For instance, on July 30, 2019, Rachel Blackey, Licensed Mental Health Counselor ("LMHC"), noted:

> Melvin reports no [history of] or current [suicidal ideation, self-injurious behavior, or homicidal ideation]. Melvin has a [history] of ADHD. Melvin denies substance use. Melvin reports that he at times experiences anxiety, mostly related to his school work. Melvin report[s] that at times work can be a stressor[;] however[,] [he] reports that he is able to cope with it, and [he] reports his ADHD [does] not influence his work performance too much. Melvin reports that his family is a protective factor for him . . . and that he is enjoying school. Melvin also report[s] that work is a protective factor and that he enjoys being able to save up his money and pay for things he wants to buy. For these reasons[,] Melvin is rated at low risk.

*See* Docket Item 6 at 1066-67. Likewise, on September 23, 2019, LMHC Blackey reported:

> Melvin is being reevaluated at this time for his annual assessment. Melvin continues to struggle with [symptoms] of ADHD, however [he] reports that he is continuing to take medications from his [primary care provider] as prescribed. Melvin reports that his [symptoms] are stable at this time. Melvin reports mild anxiety . . . that is school related. Melvin reports no recent stressors . . . [or] issues with substance use. Melvin will be seeing a nurse for a yearly update in October. Melvin will continue to benefit from being seen monthly and will participate in random urine [testing].

*See id.* at 1042. Those records were sufficient to support—and indeed do support—the ALJ's determination of Melvin's RFC.

Finally, the opinion evidence was sufficient to support, and indeed supported, the RFC.  In addition to relying on Dr. Fabiano's examining opinion, the ALJ also relied on the opinions of two state agency review consultants, M. Marks, Ph.D., and K. Lieber-Diaz, M.D., to assess Melvin's limitations in mental work-related functioning.  *See id.* at 31-32; *see also id.* at 110-11, 763-65.  All three doctors agreed that Melvin had no more than mild to moderate limitations and, as noted below, the ALJ incorporated those limitations into the RFC.  *See infra* at 9-11.  What is more, Drs. Fabiano, Marks, and Lieber-Diaz are "acceptable medical sources," *see* 20 C.F.R. § 416.902(a), who provided the ALJ with "medical opinions," *see id.* at § 416.913(a)(2)—a better basis for the RFC assessment than any missing therapy notes from nonmedical sources such as Melvin's counselors at Spectrum, *see id.* at §§ 416.902(j), 416.920c(d); *see also Telesco v. Comm'r of Soc. Sec.*, 577 F. Supp. 3d 336, 354 (S.D.N.Y. 2021) (noting that a licensed clinical social worker "is considered an 'other source' rather than an acceptable medical source under the regulations.") (also collecting cases).

In sum, even if Melvin is correct that the ALJ did not have all of Melvin's individual therapy treatment notes, the records from Spectrum still "provide[d] a comprehensive overview of [Melvin's] mental health progress over the course of his treatment."  *See Blackman v. Berryhill*, 2018 WL 3372963, at *4 (W.D.N.Y. July 11, 2018); *see also April P. o/b/o T.M. v. Comm'r of Soc. Sec.*, 2023 WL 5510080, at *4 (W.D.N.Y. Aug. 23, 2023) ("Although the record does not contain primary source records . . ., [it] does contain descriptions of the incident. . . .").  And even if that were not true, the complete record, including the opinion evidence, was more than sufficient

8

to support the ALJ's findings. The ALJ therefore did not err with respect to his duty to develop the record.

### B.     Dr. Fabiano's Opinion

Melvin also argues that the ALJ failed to incorporate into the RFC the moderate limitations about which Dr. Fabiano opined. *See* Docket Item 7-1 at 10-11. More specifically, Melvin argues that the "ALJ erred in finding Dr. Fabiano's opinion persuasive [but then] failing to incorporate its limitations without any explanation." *See id.* at 10.

An ALJ must "weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order); *accord Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022). But that does not mean that the RFC needs to "perfectly correspond with any of the opinions of medical sources cited in [the ALJ's] decision." *Matta*, 508 F. App'x at 56. As long as the ALJ considers all of the medical evidence and appropriately analyzes the medical opinions, an RFC consistent with the record is not error. *See* 20 C.F.R. § 416.945; *see also Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (holding that remand is not necessary "[w]here an ALJ's analysis . . . regarding a claimant's functional limitations and restrictions affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence").

Dr. Fabiano examined Melvin on February 7, 2018, and opined, among other things, that Melvin had (1) moderate limitations in understanding, remembering, and applying simple directions and instructions; (2) moderate limitations in interacting adequately with supervisors, co-workers, and the public; and (3) moderate limitations in

9

performing tasks at a consistent pace.  *See* Docket Item 6 at 707-11.  The ALJ found Dr. Fabiano's opinion "mostly persuasive because it [was] consistent with and supported by Dr. Fabiano's own detailed examination [of Melvin] and [his] knowledge of the disability program."  *Id.* at 31.  The ALJ also found Dr. Fabiano's opinion consistent with the opinions of Dr. Marks and Dr. Lieber-Diaz, but the ALJ concluded that Dr. Fabiano's opinion was "not consistent with more than [a] mild [impairment] in interacting with others."[5]  *See id.*

Melvin argues that "the ALJ did not state any rejection of Dr. Fabiano's moderate limitation on even simple directions and instructions" and "included *no* limitations on performing simple tasks."  Docket Item 7-1 at 10 (emphasis in original).  But that simply is not true:  The ALJ limited Melvin to performing only simple, routine, and repetitive tasks and making only simple work-related decisions.  Docket Item 6 at 27.  Those RFC restrictions are consistent with Dr. Fabiano's finding of moderate limitations in Melvin's mental work-related functioning.[6]  *See Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (affirming ALJ's decision that claimant could perform prior unskilled work where "[n]one of the clinicians who examined [the claimant] indicated that she had anything more than moderate limitations in her work-related functioning, and most reported less severe limitations."); *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (finding that moderate limitations in the four areas of mental work-related functioning are not

---

[5] Dr. Marks and Dr. Lieber-Diaz agreed that Melvin had no more than a mild limitation in interacting with others.  *See* Docket Item 6 at 110, 764-65; *see also id.* at 32.

[6] The RFC's limitations also restricted Melvin to "unskilled" work, as confirmed by the vocational expert's testimony that a hypothetical claimant with Melvin's impairments could perform work as a hand packager, cleaner, or kitchen helper, all "medium, unskilled" jobs.  *See* Docket Item 6 at 64.

inconsistent with a limitation to simple, unskilled work); *Mangual v. Comm'r of Soc. Sec.*, 600 F. Supp. 3d 313, 329 (S.D.N.Y. 2022) ("As a general matter, moderate limitations are not an impediment to the ability to perform gainful activity, particularly when an RFC has already limited a claimant to unskilled, routine work."). Moreover, Melvin does not suggest how his RFC should have been more limited given Dr. Fabiano's finding of moderate limitations in understanding, remembering, and applying both simple and complex directions and instructions. *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (summary order) ("Here, Smith had a duty to prove a more restrictive RFC, and [he] failed to do so.").

At its core, Melvin's argument boils down to a disagreement about what he can do given Dr. Fabiano's finding of moderate limitations in understanding, remembering, and applying both simple and complex directions and instructions. But the ALJ adequately addressed Dr. Fabiano's opinion and crafted an RFC that was largely consistent with that opinion as well as the other evidence in the record. It is "not the function of this Court to re-weigh evidence or consider *de novo* whether [Melvin] is disabled." *See Teena H. o/b/o N.I.K.*, 521 F. Supp. 3d 287, 292 (W.D.N.Y. 2021); *see also Pellam v. Astrue*, 508 F. App'x 87, 91 (2d Cir. 2013) (summary order) ("We think that Pellam is, in reality, attempting to characterize her claim that the ALJ's determination was not supported by substantial evidence as a legal argument in order to garner a more favorable standard of review."). Because the ALJ was "entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole," *Matta*, 508 F. App'x at 56, and because the ALJ did just that, the

ALJ's RFC determination was supported by substantial evidence, and this Court will not second-guess it.

## **CONCLUSION**

The ALJ's decision was not contrary to the substantial evidence in the record, nor did it result from any legal error. Therefore, and for the reasons stated above, Melvin's motion for judgment on the pleadings, Docket Item 7, is DENIED, and the Commissioner's cross-motion for judgment on the pleadings, Docket Item 8, is GRANTED. The complaint is DISMISSED, and the Clerk of Court shall close the file.

SO ORDERED.

Dated: April 23, 2024
         Buffalo, New York

          */s/ Lawrence J. Vilardo*
          LAWRENCE J. VILARDO
          UNITED STATES DISTRICT JUDGE